NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDAGRO, S.A., | Civil Action No. 07-cv-03742 (SDW) (MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| VENIAMIN NILVA and VIVA CHEMICAL CORP., | April 17, 2014 |
| Defendants. | |

WIGENTON, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Veniamin Nilva ("Nilva" or "Defendant") to dismiss the Complaint filed by Plaintiff Indagro, S.A. ("Indagro" or "Plaintiff") (Compl. August 8, 2007, ECF No. 1) as to Defendant for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. (4)(m). (Mot. to Dismiss, June 7, 2013, ECF No. 78). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Nilva's motion to dismiss is **denied.**

I. **BACKGROUND**[1]

This action was filed on August 8, 2007 by Indagro against Viva Chemical Corporation ("Viva") and Nilva. (Compl., ECF No. 1). Indagro is a Swiss corporation with its principal place of business in Geneva, Switzerland. (Compl. ¶ 1). According to the Complaint, Viva is/was incorporated in New Jersey and Nilva is Viva's major shareholder. (Compl. ¶¶ 2-3). The Complaint list the same Fort Lee, New Jersey address for both Nilva and Viva. (Compl. ¶¶ 2-3). Plaintiff seeks to enforce an arbitration award against Viva by the International Chamber of

---

[1] The facts set forth in this Opinion are taken from the parties' respective moving papers and filings.

Commerce in Paris ("ICC").  (Compl. ¶¶ 20-24).  The arbitration award was based on Viva's alleged breach of a Joint Venture Agreement between Indagro and Viva.  (Compl. ¶¶ 6-12).  Indagro also asserts a breach of contract claim against Nilva for failing to fulfill an alleged agreement to personally guaranty the arbitration award.  (Compl. ¶¶ 25-28).  In addition, Indagro seeks to pierce Viva's corporate veil and collect the award from Nilva directly.  (Compl. ¶¶ 29-34).  In the Complaint's fourth and final cause of action, Plaintiff seeks specific performance of Nilva's alleged agreement to guaranty the award.  (Compl. ¶¶ 35-39).

On November 14, 2008, an Order confirming the ICC's final arbitration award was issued by the Honorable Dennis M. Cavanaugh, U.S.D.J., now retired.  (ECF No. 26).  However, at some point after Plaintiff filed his Complaint, Viva commenced a second arbitration arising out of the same dispute underlying the first arbitration.  Thus, the Court chose to stay the effect of its confirmation order until the conclusion of the second arbitration proceeding.  (ECF No. 26).  Ultimately, on August 29, 2011, the Court lifted the stay on the arbitration award and awarded Plaintiff $678,900.91 in damages as well as interest, legal fees, and arbitration expenses.  (ECF No. 60).

Nilva filed this motion to dismiss the Complaint against him pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 4(m) alleging that Plaintiff failed to serve him within the time prescribed by the Federal Rules or to take any reasonable steps to extend the time for service.  As noted above, Plaintiff filed the Complaint on August 8, 2007.  (ECF No. 1).  According to an affidavit of service signed by a process server on September 20, 2007, Plaintiff attempted to have Nilva served with the Summons and Complaint on August 22, 24, and 26 of 2007, but was unsuccessful.[2]  (Ex. 9, ECF No. 69-2).  According to the process server's affidavit, the concierge

---

[2] The process server's affidavit describes Nilva's Fort Lee address as a multi-unit apartment building with a 24-hour concierge where all visitors must be announced.  (Ex. 9, ECF No. 69-2).  The process server stated that no one in

reported that Nilva and his wife travel frequently and told him they were going to Russia with no return date.  Id.  Plaintiff also unsuccessfully attempted to have Nilva served at a Florida address on October 3, 2007.[3]  Id.  Plaintiff was only able to serve Viva, the corporation, through the New Jersey Secretary of State.  (ECF No. 3).  According to Plaintiff, once Howard Reiss, Esq. ("Reiss"), Counsel for Viva and Nilva, got involved, Reiss indicated he would ask Nilva if he could accept service on his behalf, but was not given permission.  (Pl.'s Opp'n Br. 8-9).

During an evidentiary hearing in the second arbitration in Paris, France on July 7 and 8, 2009, Indagro's counsel personally handed Nilva and his counsel a copy of the Summons and Complaint and informed them that he was making personal service.  (See Affidavit of Service, ECF No. 62-4).  Nilva asserts that Plaintiff's attempted service in Paris is invalid under both the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention" or "Convention").  Plaintiff also takes issue with the fact that Plaintiff waited over two years to file an Affidavit of Service related to the attempted service in Paris.  (Mar. 29, 2012, ECF No. 62).  Nilva contends that Plaintiff did nothing between August 2007 and July 2009, and nothing thereafter, to attempt service or seek an extension of the 120-day deadline under Rule 4(m) for service of the Summons and Complaint. (Def.'s Br. 4).  According to Nilva, Plaintiff cannot demonstrate good cause for this inordinate delay in attempting service or seeking the Court's permission for an extension.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(5) permits a court to dismiss a case for

---

Nilva's unit responded to any of the calls from the concierge and that he even went to the door of the unit accompanied by security and there was no answer.  Id.
[3] The declaration from the process server notes that he was unable to serve process because it was a high rise building, without a directory, and he did not have the apartment number.  (Ex. 9, ECF No. 69-2).

"insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). "The party asserting the validity of service bears the burden of proof on that issue." Grand Entm't Group v. Star Media Sales, 988 F.2d 476, 488 (3d Cir. 1993). District courts possess "broad discretion" when evaluating a motion to dismiss for insufficient service of process. See Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). "Where a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action." Ramada Worldwide Inc. v. Shriji Krupa, LLC, Civ. No. 07-2726, 2013 U.S. Dist. LEXIS 65655, at *17 (D.N.J. Apr. 17, 2013). "Rather, courts will elect to quash service and grant plaintiff additional time to properly serve the defendant." Id.

### III. DISCUSSION

#### a. Failure to serve within 120 days under Fed. R. Civ. P. 4(m)

Nilva first argues that Plaintiff's failure to serve him within 120 days requires that the Complaint against him be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 4(m). Rule 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m). Although Plaintiff made multiple attempts to serve Nilva within the 120-day period, the only potentially valid service occurred in Paris approximately 700 days after the Complaint was filed. The attempted service in Paris is clearly outside the 120-day time limit. However, "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added); see also Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987) ("The time limit is not absolutely inflexible.").

"The rules do not define 'good cause,' but the Third Circuit equates 'good cause' with the

4

Fed. R. Civ. P. 6(b)(2) standard of 'excusable neglect.'" Emmanouil v. Mita Management, LLC, Civ. No. 11-5575, 2012 WL 2277721, at *4 (D.N.J. June 15, 2012) (citing MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995)). There are three factors for a court to consider when determining whether to grant an extension for good cause: (1) whether the plaintiff undertook reasonable efforts in attempting service of process; (2) whether the defendant will be prejudiced by the lack of timely service; and (3) whether the plaintiff moved for an enlargement of time to serve. Emmanouil, 2012 WL 2277721, at *4-5 (citing MCI Telecomms., 71 F.3d at 1097).

The first factor, whether the plaintiff undertook reasonable efforts in attempting service of process, weighs in Plaintiff's favor. Plaintiff attempted to serve Nilva on three separate occasions at his address in New Jersey and once in Florida. At the New Jersey address, Plaintiff learned that Nilva was in Russia with no return date, thus making further attempts at service in New Jersey difficult, if not impossible. After serving Viva through the Secretary of State, Plaintiff asked Counsel for both Viva and Nilva to accept service on Nilva's behalf but Nilva would not grant him permission. In Emmanouil, the Court found that the plaintiff's efforts were "not only diligent but exhaustive in their attempts at service" where they attempted service on "five separate occasions." 2012 WL 2277721, at *4. Here, the three attempts in New Jersey, one in Florida, one in France and request made to Nilva's attorney demonstrate that Plaintiff attempted service on more than five occasions. Thus, this Court finds that Plaintiff has made reasonable efforts to attempt to serve Nilva.

The second factor in determining good cause, whether or not Nilva is prejudiced by the delay in service, also weighs in Plaintiff's favor. Nilva had actual notice of this suit, which he admits, as of December 3, 2007. (See Nilva Decl. ¶ 2, June 24, 2013, ECF No. 81-2). In

addition, Nilva has actively participated in the defense of this lawsuit as evidenced by the submission of affidavits and a declaration.  (See ECF Nos. 11, 23, 81-2).  In Emmanouil, the Court found that defendants were not prejudiced "because, from the outset, they had actual notice of the proceeding."  2012 WL 2277721, at *4 (citing Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988) (holding that a defendant with actual notice of the claims and underlying facts and legal theories "cannot complain of undue prejudice")).  Likewise, here, this Court finds that Nilva had actual notice of the litigation from the outset and thus cannot make a valid argument for undue prejudice.

The third factor in the good cause analysis is whether the plaintiff moved for an enlargement of time to serve.  Here, Plaintiff claims that Jeremy Harwood, counsel for Indagro, wrote to the Court advising that Indagro had served Viva through the Secretary of State and requesting an additional 120 days to serve Nilva.  However, Indagro did not follow up on this request or continue to make additional requests leading up to the attempted service in Paris.  This factor, therefore, weighs in favor of Nilva.  However, this factor alone is not dispositive of the good cause analysis.  As the Emmanouil Court recognized, failure to move for an enlargement of time "is not by itself fatal to a plaintiff's efforts to establish good cause."  2012 WL 2277721, at *5 (citing United States v. Nuttall, 122 F.R.D. 163, 167 (D. Del. 1988); Gordon v. Hunt, 116 F.R.D. 313, 321 (S.D.N.Y. 1987)).

Considering the three factors together, this Court finds that good cause exists to grant Plaintiff an extension of time to serve Nilva.  It is noted that "while there must be substantial compliance with the rules of service, they are to be liberally construed where, as seems to be the case here, defendant has sufficient notice of the complaint."  Concepcion v. VEB Backereimaschenbau Halle, 120 F.R.D. 482, 485 (D.N.J. 1988).  In addition, the Third Circuit

has repeatedly expressed its "preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). See also United States v. $55,518.05 in U.S. Currency, No. 82-2758, slip op. at 6 (3d Cir. Feb. 21, 1983); Gross v. Stereo Component Systems Inc., 700 F.2d 120, 122 (3d Cir. 1983); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982).

### b. Validity of Attempted Service in Paris

Plaintiff's counsel attempted to serve Nilva in Paris during an arbitration hearing by handing him a copy of the Summons and Complaint. The parties dispute the validity of this attempted service. Federal Rule of Civil Procedure 4(f) ("Rule 4(f)") provides that an individual may be served in a foreign country by any "internationally agreed means." Fed. R. Civ. P. 4(f)(1). Both France and the United States are signatories to the Hague Service Convention. See Hague Conference on Private International Law, Status Table, http://www.hcch.net/index_en.php? act=conventions.status&cid=17 (last visited April 7, 2014). The United States Supreme Court has held that service in accordance with the Hague Service Convention is mandatory whenever the Convention applies. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988). As a threshold matter, the Court must determine whether or not the Hague Service Convention applies in this case.

Article One of the Hague Service Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. 361, Art. 1 (emphasis added). This Court must thus determine whether or not Plaintiff's address was "known." Plaintiff contends that because Nilva was not a resident or domiciliary of France, he had no address in France, and thus his address was "not known." As Nilva's address in France could not be "known," Plaintiff asserts that the Convention does not apply. Nilva,

7

however, argues that his address in France was that of the hotel where he was staying. According to Nilva, Plaintiff's counsel "knew" the name and address of Nilva's hotel, or if he did not, the information was readily available to him.

The case law on the issue of whether or not an address is "known" under Article One of the Convention is not extensive.  However, those courts who have dealt with the issue have generally found that an address is "not known" if a plaintiff exercised reasonable diligence in attempting to discover the address and was unsuccessful in doing so.  See e.g. Opella v. Rullan, Civ. No. 10-21134, 2011 U.S. Dist. LEXIS 69634 (S.D. Fla June 29, 2011) (noting that "an address is not 'known' within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address"); Compass Bank v. Katz, 287 F.R.D. 392, 394-95 (S.D. Tex. 2012) ("In deciding whether defendants' addresses are 'unknown,' courts have repeatedly looked to the efforts plaintiffs have put forth in attempting to discover said addresses."); RPost Holdings, INc. v. Kagan, Civ. No. 11-238, 2012 WL 194388, at *1, *2 (E.D. Tex. Jan. 23, 2012) (determining defendant's address was unknown under the Hague Convention after the plaintiff attempted service on the address associated with defendant's online business website and requests defendant's address from defendant's attorney and been refused); BP Prods. N. Am., Inc., v. Dagra, 232 F.R.D. 263, 264 (E.D.Va. 2005) (concluding that defendant's address was "unknown" after numerous attempts to serve defendant at his last two addresses in Pakistan failed, and after plaintiffs hired an investigative firm who spent a month searching through various records and other identification databases but were unable to determine defendant's whereabouts).  In these cases, both the defendant's address and physical location were unknown.  Here, the facts are somewhat different as Nilva's physical whereabouts in France were known but he had no permanent address in the

8

country. Thus, this Court must determine not just whether Nilva's address in France was "known" but whether a temporary address, such as that of a hotel during a short stay, would be considered an "address" under the Convention.

The language of Rule 4(f) does not require that the individual being served in a foreign country be a citizen or permanent resident of that country. See Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 524 (9th Cir. 1997) ("[T]he plain language of Rule 4(f) indicates that application of the rule is not triggered by the citizenship of the individual being served but rather the place in which service is effected."); Opella, 2011 U.S. Dist. LEXIS 69634, at *11 n. 9 (where [defendant] resides is irrelevant to determining if [defendant] was properly served, because plaintiff served [defendant] in Mexico and thus plaintiff had to comply with the requirements of Rule 4(f)"). Thus Rule 4(f) applies even if, as here, the defendant does not have a residence in the foreign country. All that is required under Rule 4(f) is for service to be attempted in a foreign country. If the Court were to determine that the address of an individual is "unknown" for purposes of Article One of the Hague Convention simply because that person does not have a permanent address in that Country, it would greatly narrow the scope of both the Hague Convention and Rule 4(f). Without any clear directive in the Convention, Federal Rules or precedential case law, this Court declines to make this determination.

In addition, the Hague Service Convention requires each participating State to "designate a Central Authority which will undertake to receive requests for service coming from other contracting states." 20 U.S.T. 361, Art. 2. The Central Authority is then to serve or arrange service of the documents to the addressee. 20 U.S.T. 361, Art. 5. Thus, the purpose of the Convention's "known address" requirement is likely to ensure that the Central Authority has an address where it can have the documents served. Because the Central Authority would be able to

serve documents at a temporary address, such as that of a hotel, it follows that a temporary hotel address could be considered an "address" under Article One of the Convention. Thus, this Court finds that Nilva's temporary hotel address in France is the address at issue.

To determine whether or not this address is "known," this Court looks to whether Plaintiff exercised reasonable diligence in attempting to discover Nilva's address in France. Although Plaintiff was diligent in attempting to determine Nilva's address and whereabouts in the United States, as demonstrated by multiple attempts to serve Nilva at addresses in two different states and through correspondence with Nilva's counsel, this same diligence is not evident in Plaintiff's attempt to serve Nilva in France. Plaintiff does not argue that he attempted to find Nilva's hotel address while in Paris. According to Nilva, Plaintiff's counsel knew which hotel Nilva was staying in. (Nilva Decl., ¶ 16, ECF No. 81-2). Even if this is not true, Plaintiff could likely have discovered the name of the hotel by asking Nilva or Nilva's attorney. As Plaintiff has not exercised reasonable diligence in attempting to discover Nilva's hotel address in France, this Court cannot hold that Nilva's address was "not known." Thus, this Court finds that the Hague Service Convention applies.

Under the Convention, service is accomplished by submitting a request to the Central Authority designated by the State in which service is to be effected. 20 U.S.T. 361, Art. 3. Here, Plaintiff did not submit a request to serve Nilva to France's Central Authority. In addition, Article Ten of the Convention states, in pertinent part:

> Provided the State of destination does not object, the present Convention shall not interfere with –
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

20 U.S.T. 361, Art. 10. Article Ten, to which France has not objected, essentially allows direct service "through the judicial officers, officials or other competent persons of the State of destination." 20 U.S.T. 361, Art. 10. Here, Plaintiff makes no argument that the attempted service was made in accordance with Article Ten or that Plaintiff's counsel, the individual who attempted to serve Nilva in France, was a "judicial officer, official or other competent person" of France, "the State of destination." It is Plaintiff's burden to prove the validity of service. Grand Entm't Group, 988 F.2d at 488. Here, because Plaintiff has not shown that he submitted a request to France's Central Authority or effected service properly under Article Ten of the Convention, this Court finds that Plaintiff's attempt to serve Nilva in France was invalid.

  **c. Extension of Time to Complete Service**

Although Plaintiff's attempt to serve Nilva in Paris was invalid, Plaintiff's good cause arguments are sufficient to permit a further extension of time within which to serve Nilva. As noted above, Plaintiff took reasonable efforts to attempt to serve Nilva and Nilva has had actual notice of the litigation from the outset. The rules of service "are to be liberally construed" where, as here, "defendant has sufficient notice of the complaint." Concepcion, 120 F.R.D. at 485. This Court will therefore grant Plaintiff thirty (30) days from the date of issuance of this Opinion and Order to serve Nilva. If Plaintiff is unable to effect service of process upon Nilva despite a diligent effort to do so during the 30-day extension, Plaintiff is granted leave to file a motion for alternative service pursuant to Fed. R. Civ. P. 4(e)(1) (an individual may be served "following state law for serving a summons . . . in the state where the district court is located") and N.J. Ct. R. 4:4-4(b)(3) ("If service cannot be made by any of the modes provided by this

rule, any defendant may be served as provided by court order, consistent with due process of law."). This Court's decision follows the Third Circuit's expressed preference for resolving cases on the merits. See e.g. Hritz, 732 F.2d at 1181; Gross, 700 F.2d at 122; Feliciano, 691 F.2d at 656.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **denied**. Plaintiff is granted an additional 30 days to complete service. If Plaintiff is unable to effect service of process upon Nilva despite a diligent effort to do so during the 30-day extension, Plaintiff is granted leave to file a motion for alternative service pursuant to Fed. R. Civ. P. 4(e)(1) and N.J. Ct. R. 4:4-4(b)(3). An appropriate Order accompanies this Opinion.

                                                                s/Susan D. Wigenton
                                                                Susan D. Wigenton, U.S.D.J.

Date:           April 17, 2014
Original:       Clerk's Office
cc:             Hon. Madeline C. Arleo, U.S.M.J.
                All Counsel of Record
                File