**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INDAGRO S.A., | : |
| | : |
| Plaintiff, | :     Civil Action No. 07-cv-3742 (SDW) |
| | : |
| v. | : |
| | :     **OPINION** |
| VENIAMIN NILVA AND VIVA CHEMICAL | : |
| CORP., | : |
| | :     January 6, 2015 |
| Defendants. | : |

**WIGENTON**, District Judge.

Before this Court is Defendant Veniamin Nilva's ("Defendant Nilva") Motion to Dismiss the Complaint filed by Plaintiff Indagro S.A. ("Indagro" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **DENIES** Defendant Nilva's Motion to Dismiss.

**FACTS AND PROCEDURAL HISTORY**

This matter arises from a contractual dispute and subsequent arbitration hearing held by the International Chamber of Commerce ("ICC") involving Viva Chemical Corporation ("Defendant Viva") and Indagro. Indagro has its principal place of business in Geneva,

1

Switzerland, and trades in commodities, including sulfur. (Compl. 1.) Defendant Nilva is the primary shareholder in Defendant Viva,[1] which is incorporated in New Jersey with its principal place of business in Fort Lee, New Jersey. (*Id.* at 2.) On or about August 25, 2004, Indagro and Defendant Viva entered into a Joint Venture Agreement ("JVA") for the purpose of purchasing and reselling sulfur in bulk. (*Id.* at 2, Ex. 1.) In April 2005, a dispute arose between the parties, whereby Indagro claimed that Defendant Viva "wrongfully appropriated and sold for its own account sulfur that was supposed to be sold by Indagro pursuant to the terms of the JVA." (*Id.* at 2.) The parties were unable to resolve the dispute and Indagro commenced arbitration against Defendant Viva at the ICC in London pursuant to the terms of the JVA. (*Id.* at 3.)

The arbitration commenced in July 2006, beginning with an evidentiary hearing that was attended by representatives from both Defendant Viva and Indagro. (*See id.* at 3–4; Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") 4.) Representing Defendant Viva was Constantine Lutsenko ("Lutsenko"), former Vice President of Defendant Viva, and counsel Andrew Meads ("Meads") and Middleton Potts ("Potts"). (Compl. 3; Def.'s Br. 4.) Defendant Nilva was not present. (Compl. 3–4; Def.'s Br. 4.) During the hearing the parties allegedly reached an agreement under which the dispute was to be decided on the papers "alone after an accounting of the JVA's finance was completed by each party, and any amount established to be due amongst the parties would thereafter be paid." (Compl. 3–4; Def.'s Br. 4.) This agreement was recorded in a Procedural Order by Consent ("Consent Order"). (*See* Compl. Ex. 2.)

Plaintiff claims that the agreement also "entailed the posting of reciprocal personal guarantees" by both parties. (*Id.* at 3.) Although Defendant Nilva was not present at the hearing,

---

[1] The current Motion to Dismiss is only with respect to Defendant Nilva in his personal capacity, and not Defendant Viva. (Def.'s Br. 2.)

Plaintiff contends that Lutsenko had the authority to enter into that part of the agreement on Defendant Nilva's behalf.[2] (*See id.* at 3–4.) However, Defendant Nilva contends that Lutsenko never had authority to enter such an agreement on his behalf, nor would he ever agree to personally guaranty Defendant Viva's financial obligations. (*Id.*) Subsequently, Plaintiff informed the ICC arbitrator that the settlement agreement could not go forward, and elected to restore the case. (Compl. 4.)

On December 7, 2006, the arbitration continued with an evidentiary hearing and the submission of post-hearing briefs. (Def.'s Br. 5.) On May 1, 2007, the ICC ruled in favor of Indagro, awarding it $678,909.91 in damages, plus interest, legal fees, and costs, totaling $925,511.39.[3] (*See* Compl. Ex. 5, at 24–25.) On August 8, 2007, Plaintiff filed suit in the District of New Jersey, seeking to enforce the arbitration award issued by the ICC arbitrator, since at that point Defendant Viva had yet to pay any amount of the award. (Dkt. No. 1.) In this suit against Defendants Nilva and Viva, Plaintiff sets forth the following causes of action: (1) breach of contract for Defendant Nilva's failure to post both a personal guaranty and to pay the award issued by the arbitrator; (2) piercing the corporate veil, in order to recover the award due by Defendant Viva from Defendant Nilva himself; and (3) specific performance to require Defendant Nilva to adhere to the Consent Order and post a personal guaranty to pay the award issued by the arbitrator. (Dkt. No. 1, Compl. 5–7.) Plaintiff also asked the court to enter an order, pursuant to 9 U.S.C. §

---

[2] Plaintiff submitted a declaration and email from Andrews S. de Klerk ("Klerk"), counsel for Plaintiff, who was present at both arbitration hearings, in which Klerk states that both parties did agree to reciprocal personal guarantees. (*See* Dkt. No. 88, at 3.) In fact, Klerk states that during the first hearing Defendant Viva's representative(s) called Defendant Nilva to confirm that they had his authority to enter into the agreement that he would personally assume the financial obligations of Defendant Viva. (*Id.*)

[3] Additionally, on October 28, 2010, the ICC issued a final award in a second related arbitration in favor of Defendant Viva in the amount of $506,810.44. (*See* Def.'s Br. 5, n.3.) Defendants attempted to use this award to offset the Plaintiff's award of $678,900.91, however, the Court denied his request. (*See* Dkt. No. 60.)

207, "confirming the ICC award as a judgment against Viva in the full amount stated therein with pre-judgment interest and post-judgment interest thereafter." (Compl. 5.)

On December 6, 2007, Plaintiff requested an entry of default against Defendant Viva, which was subsequently entered by the Clerk. (Dkt. No. 4.) On June 16, 2008, Judge Dennis M. Cavanaugh (now retired) denied Plaintiff's Motion for Default Judgment. (Dkt. No. 16.) On October 1, 2008, Plaintiff filed a Motion to Confirm an Arbitration Award. (Dkt. No. 21.) On November 19, 2008, Judge Cavanaugh entered an Order confirming the ICC arbitration award. (Dkt. No. 26.) On April 15, 2011, Defendant Viva filed a cross motion to offset the first arbitration award, by the second arbitration award in its favor. (Dkt. No. 58.) On August 29, 2011, an Order was entered denying Defendant Viva's motion to offset the first award. (Dkt. No. 60.) On October 9, 2012, Plaintiff filed a Motion for Default Judgment against Defendant Nilva. (Dkt. No. 65.) On May 15, 2013, Magistrate Judge Joseph A. Dickson entered an Order, granting Plaintiff's motion for default judgment against Defendant Nilva, and denying Defendant Nilva's cross motion to dismiss the complaint without prejudice for invalid service. (Dkt. No. 68, 72.)

On April 15, 2014, this case was reassigned to this Court. On April 17, 2014, an Order was entered denying Defendant Nilva's second motion to dismiss for invalid service. (Dkt. Nos. 78, 83.) On June 16, 2014, Defendant Nilva filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 87.) On July 7, 2014, Plaintiff filed opposition to the Motion to Dismiss, and on July 28, 2014, Defendants filed a reply to that motion. (Dkt. Nos. 88, 91.)  On August 1, 2014, by letter, Plaintiff requested leave to file an attached sur-reply to what Plaintiff deemed new arguments and misstatements in Defendant's reply.[4]

---

[4] The Court reviewed this submission.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "'requires a 'showing' rather than a blanket assertion of an entitlement to relief'" (quoting *Twombly*, 550 U.S. at 555 n.3)).

In considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

5

a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (second alteration in original) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### A. Breach of Contract

As a general rule, contract interpretation "is a matter of law for the court." *Atlantic City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000). To establish a breach of contract claim, a plaintiff must allege: (1) that the parties entered into a valid contract; (2) that the defendant failed to perform its obligations under the contract; and (3) that the plaintiff sustained damages as a result. *Sheet Metal Workers Int'l Assoc. Local Union No. 27 v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013); *Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140, 149 (D.N.J. 2012) (quoting *Murphy v. Implicito*, 392 N.J. Super. 245 (App. Div. 2007)); *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

In Defendant Nilva's Motion to Dismiss, he argues that no agreement was ever reached in which he agreed to personally guaranty the financial obligations of Defendant Viva. Therefore, he asserts, there was no breach of contract, which also renders the claim for specific performance moot. (Def.'s Br. 7–10.) To support his argument, Defendant Nilva points to the Consent Order, which allegedly encompassed the parties' entire agreement but fails to mention the parties' agreement to bind themselves personally. (*Id.* at 4–5 & n.2; *see also* Compl. Ex. 2.) Additionally, in response to Plaintiff's opposition brief, Defendant Nilva contends that he never gave Lutsenko or Meads actual authority to enter into the settlement agreement with Indagro on his behalf (nor

did apparent authority exist). (Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply Br.") 3–8; *see also* Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Opp. Br.") 12–18.) Defendant Nilva contends this is demonstrated by an email forwarded the following day from his counsel to Plaintiff, stating that he never granted Lutsenko or Meads authority to act on his behalf, nor did he ever plan to personally guaranty Defendant Viva's financial obligations.[5] (Def.'s Reply Br. 3–8; *see also* Compl. Ex. 3.)

At this stage, Plaintiff has sufficiently pled its breach of contract claim. Plaintiff states that a valid contract did exist between itself and Defendant Nilva. (Compl. 3–6.) Specifically, Plaintiff claims that during their discussions at arbitration, it struck an agreement with Defendant Nilva in which each party agreed to post reciprocal personal guaranties. (*Id.* at 3.) Plaintiff contends that while Defendant Nilva was not present at the meeting, his representatives Lutsenko and Meads both had authority to enter into the agreement on behalf of Defendant Nilva. (*Id.* at 5.) Furthermore, Plaintiff states that because Defendant Nilva failed to post a personal guaranty, he breached the agreement, and subsequently caused Plaintiff to suffer damages as a result (the damages being the amount of the ICC award, which was $678,900.91). (*Id.* at 4–5.)

---

[5] Defendant Nilva raises additional arguments that will not be dealt with at this stage. For example, Defendant Nilva contends that Plaintiff cannot seek to enforce the settlement agreement, regarding the alleged personal guaranty claim, when it decided to "restore the case to the arbitrator's calendar and proceed[ed] to hearing and having obtained a judgment against Viva without regard to Viva's alleged promise to procure a personal guaranty from Nilva." (Def.'s Br. 10.) Defendant Nilva is essentially arguing that Plaintiff cannot seek to enforce both the settlement agreement, with the alleged personal guaranty provision, and the actual judgment against it from the ICC arbitrator. (*Id.*) Defendant Nilva's final contention is that Plaintiff's breach of contract claim should fail because the only loss suffered by the Plaintiff, assuming a valid contract existed and Defendant Nilva breached such a contract, are the costs associated with the settlement discussions and reinstatement of the case to arbitration, not the damages awarded by the arbitrator. (*Id.* at 10–11.)

**B.  Piercing the Corporate Veil**

Generally, a corporation is considered an entity separate from its shareholders. *Port Drivers Fed'n 18, Inc. v. All Saints Express., Inc.*, 757 F. Supp. 2d 443, 456 (D.N.J. 2010) (citing *Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. 2008)). "[U]nder certain circumstances, courts may disregard the corporate form and pierce the corporate veil to hold the shareholders responsible for the actions of the corporation." *Port Drivers Fed'n 18*, 757 F. Supp. 2d at 456. In order to state a cognizable claim for piercing the corporate veil, a plaintiff must show that: (1) the corporation is organized and operated as a mere instrumentality of a shareholder, (2) the shareholder uses the corporation to commit fraud, injustice or circumvent the law, and (3) the shareholder fails to maintain the corporate identity. *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171–72 (3d Cir. 2002). There are seven factors that are relevant for this analysis:

> (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) non-functioning of other officers or directors; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Port Drivers Fed'n 18*, 757 F. Supp. 2d at 456–57 (citing *Verni ex rel. Burnstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. App. Div. 2006)).

Plaintiff has sufficiently pled a claim for piercing the corporate veil. Here, Plaintiff claims that Defendant Viva is operated merely as an "alter ego" of Defendant Nilva. (Compl. 6.) Plaintiff asks this Court to pierce the corporate veil of Viva because Defendant Nilva "operated Viva in such a manner as to perpetrate fraud and/or injustice or otherwise circumvent the law." (*Id.*)

8

Specifically, Plaintiff alleges that Defendant Nilva: (1) "operates Viva out of his residence"; (2) has grossly undercapitalized Defendant Viva; and (3) has "fail[ed] to observe corporate formalities such as paying dividends, maintain[ing] solvency, and keep[ing] corporate records." (*Id.*) In further support of its piercing the corporate veil claim, Plaintiff points to an email stating that "the reason [Defendant] Nilva had not put Viva into bankruptcy was because Viva had outstanding loans which Nilva personally guaranteed, and thus would have to pay back if the company went out of business." (Pl.'s Reply Br. 22-24; Pl.'s Reply Br. Ex. 6)

Defendant Nilva claims that such allegations lack factual specificity, and are merely bare bone allegations, insufficient to survive a motion to dismiss under Rule 12(b)(6).[6] (*Id.* at 14.) Further, Defendant Nilva argues that Plaintiff attempts to support its allegations by introducing facts not originally included in its Complaint, however such evidence may not be considered when ruling on a motion to dismiss. (Def.'s Reply Br. 10–12.) At this stage, this Court finds that Plaintiff's pleadings are factually sufficient to set forth a claim for piercing Viva's corporate veil. *See Phillips*, 515 F.3d at 234 ("'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." (quoting *Twombly*, 550 U.S. at 556)).

**CONCLUSION**

For the reasons set forth above, this Court will **DENY** Defendant Nilva's Motion to Dismiss the Complaint.

s/ Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Parties
        Magistrate Judge Mannion

---

[6] Plaintiff requested leave from the Court to amend its Complaint in the event the Court finds the veil-piercing claim insufficiently pled. (*See* Pl.'s Reply Br. 25.)